**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0238-18T3

DAVID A. FORMAN,

     Plaintiff-Respondent,

v.

AMY LEVENSON,

     Defendant-Appellant.

_____

Submitted December 9, 2019 – Decided  January 22, 2020

Before Judges Fasciale, Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1773-10.

Hegge & Confusione, LLC attorneys for appellant (Steven Resnick, on the briefs).

Laufer, Dalena, Jensen & Bradley, LLC, attorneys for respondent (Terryann K. Bradley and Peter Gino Bracuti, on the brief).

PER CURIAM

     Defendant appeals from paragraphs one and three of an August 31, 2018

order partially denying reconsideration of a June 12, 2018 order pertaining to child support; and a September 18, 2018 order, which amended defendant's child support obligation.[1] Plaintiff sought child support for his eighteen-year-old son (the son) and, after initially denying that application, the judge awarded plaintiff support until the son's twenty-third birthday. We reverse that part of the judge's order on the emancipation ruling, vacate the child support award in plaintiff's favor, and remand for a plenary hearing consistent with this opinion. We otherwise affirm.

In May 2018, plaintiff filed a motion for (1) child support; (2) permission to issue subpoenas relating to settlement monies paid to defendant by her former employer (the Barclays settlement); (3) enforcement of a provision of the Marital Settlement Agreement (MSA) relating to an investment account at Goldman Sachs (GS account); and (4) counsel fees. Plaintiff's May 2018 motion led to the orders under review.

On appeal, defendant argues the judge (1) deprived her of due process; (2)

_____

[1] On today's date, we released our opinion in Forman v. Levenson (Forman I), No. A-3518-17 (App. Div. Jan. 22, 2020) (slip op. at 1). In that action, defendant appealed from a March 23, 2018 order confirming an arbitration award. Defendant primarily argued that the arbitration agreement was invalid, the Arbitrator exceeded the scope of his powers, and plaintiff engaged in fraud. We disagreed and upheld the award.

A-0238-18T3

erred by denying reconsideration; (3) lacked jurisdiction; (4) erroneously awarded plaintiff child support without conducting a plenary hearing; (5) improperly ordered that her support payments be made via income withholding; (6) mistakenly concluded the son would remain unemancipated; and (7) abused her discretion by awarding plaintiff counsel fees and finding defendant engaged in bad faith.

I.

We begin with defendant's argument that the judge denied her due process by failing to adjourn the return date on plaintiff's motion. We see no abuse of discretion by denying the adjournment request and conclude there was no due process violation.

Plaintiff filed his motion on May 4, 2018, with a return date of June 8, 2018. Defendant did not file a timely opposition. On June 4, 2018, defendant requested consent to adjourn the motion, which plaintiff's counsel refused. Defendant then wrote the judge two letters. Her first letter—which was undated—requested an adjournment and advised the judge that she had been ill and misunderstood the deadline for filing an opposition. In that same letter, defendant pointed out inaccuracies in plaintiff's case information statement (CIS), detailed her own finances, and argued the judge lacked jurisdiction

3

because the appeal in Forman I was pending. Her second letter—dated June 8, 2018—alleged that plaintiff's counsel submitted "a knowingly inaccurate CIS," and stated that "the issues of child support and respective income are in the appellate court now," thus depriving the judge of "jurisdiction on non-enforcement issues."

The judge disbelieved that defendant was confused, found that defendant represented herself in multiple post-judgment matters and was familiar with the court system, and determined that defendant acted in bad faith. Moreover, defendant did not explain what information she would have presented to the judge had she obtained the adjournment. Although the decision to grant or deny an adjournment "is peculiarly within the sound discretion of the trial court," because one party's right to compliance with the rules could conflict with the other party's right to an adjudication on the merits, "competing policies are involved in disputes over procedural issues." Abtrax Pharm., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 513 (1995) (internal quotation marks and citation omitted). An adjournment request should be granted when denying it would cause the requesting party manifest wrong or injury. See Allegro v. Afton Vill. Corp., 9 N.J. 156, 161 (1952). Here, there was no prejudice because the relief in the order was not adverse to defendant.

4

First, the judge denied plaintiff's motion seeking permission to issue subpoenas. As for child support, the judge initially denied plaintiff's motion. It was not until plaintiff's reconsideration motion that plaintiff obtained an order from the judge awarding child support, and by then, defendant had filed an opposition. Thus, the child support award—which we are vacating—resulted from the timely opposed motion for reconsideration, not from the judge's denial of defendant's adjournment request.

Second, defendant was aware, before plaintiff filed the May 2018 motion, that the Arbitrator ordered her to pay the awards, and that the judge confirmed the specific amounts. Defendant had every opportunity to litigate the substantive merits of those awards during the arbitration proceedings. Indeed, we upheld the awards in Forman I.

Third, defendant does not appeal or dispute the judge's findings that plaintiff was entitled to $1098.61 for his share of the GS account, and that defendant failed to give him his share as required by the MSA. It was not a manifest wrong or injury for the judge to order defendant to pay a debt that she failed to dispute. See Allegro, 9 N.J. at 161.

Fourth, the judge's grant of attorneys' fees to plaintiff was grounded in defendant's bad faith pertaining to failure to pay the arbitration awards—which

A-0238-18T3

we will subsequently address—not solely on defendant's bad faith for making the adjournment request. In other words, the judge saw bad faith, concluding defendant falsely claimed she "genuinely was unaware of the procedural filing requirements." The judge however premised the award of attorneys' fees on her finding that defendant failed to pay the arbitration awards and that defendant "acted in bad faith in not complying with the provisions of the MSA." The judge found the MSA allowed for attorneys' fees for any willful violation.

## II.

Defendant argues that the judge erred by denying her motion for reconsideration of the June 12, 2018 order. Essentially, she contends that, because she submitted a certification attesting to her health issues and her confusion regarding the return date, the judge should have found that her representations as to those facts were correct. We see no abuse of discretion by denying defendant's motion.

On June 12, 2018, the judge denied plaintiff's request for child support and "subpoena power," but ordered defendant to pay plaintiff (1) $344,972.58 from the Barclays settlement; (2) $15,000 towards plaintiff's attorneys' fees, ordered by the Arbitrator on February 2, 2018; and (3) $2665 to pay directly to plaintiff's attorneys, ordered by the Arbitrator on October 25, 2017. The June

12, 2018 order provided that the specified amounts would be "reduced to judgment in favor of the [p]laintiff" if defendant failed to comply.[2] This order further required defendant to make additional payments, including (1) $1098.61 for his share of the GS account, and (2) $4185 in counsel fees.[3]

Defendant unsuccessfully moved for reconsideration of the monetary amounts referenced in the June 12, 2018 order. Plaintiff filed a motion in aid of litigant's rights, and cross-moved for reconsideration of the judge's denial of child support. On August 31, 2018, the judge granted plaintiff's motion for reconsideration, and without holding a plenary hearing, ordered defendant to "pay child support . . . in the amount of $367.00 per week with $10.00 in arrears until paid in full effective May 4, 2018 through Bergen County Probation[.]" The judge also granted plaintiff's motion to hold defendant in violation of litigant's rights, and ordered defendant to pay $3345 to plaintiff's attorneys.

"[R]econsideration 'is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice.'" Cummings v. Bahr, 295 N.J. Super.

---

[2] The $344,972.58 award was reduced to judgment by an earlier order dated April 30, 2018, which was entered by another judge.

[3] The order stated "[p]laintiff to pay counsel fees for this motion," but the accompanying statement of reasons and later references make clear that defendant, rather than plaintiff, was to pay the fees.

A-0238-18T3

374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).  Reconsideration should only be used "'for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[.]'"  Ibid.  (quoting D'Atria, 242 N.J. Super. at 401-02).

A party should not seek reconsideration based only on dissatisfaction with the judge's decision, and "[t]he standards for reconsideration are substantially harder to meet than are those for a reversal of a judgment on appeal."  Regent Care Ctr., Inc. v. Hackensack City, 20 N.J. Tax 181, 184-85 (2001).  The party seeking reconsideration must show that the judge "acted in an arbitrary, capricious, or unreasonable manner."  D'Atria, 242 N.J. Super. at 401 (remarking that "[a]lthough it is an overstatement to say that a decision is not arbitrary, capricious, or unreasonable whenever a [c]ourt can review the reasons stated for the decision without a loud guffaw or involuntary gasp, it is not much of an overstatement").

The judge acted within her discretion in denying defendant's adjournment request, even assuming the truth of defendant's representations regarding her

8

state of health and confusion. The fact that defendant more formally certified to the same facts that she previously presented in her two informal letters to the judge did not establish an abuse of discretion. Defendant's poor health and procedural misunderstanding did not entitle her to an adjournment, regardless of how those facts were presented. Thus, for the same reasons the judge did not abuse her discretion in denying the adjournment request in the first instance, she did not abuse her discretion in refusing to reconsider that determination.

## III.

Defendant argues that the trial court lacked jurisdiction to address plaintiff's request for child support because defendant's appeal from the arbitration award was pending (Forman I). Defendant explained to the judge that "[m]uch of [p]laintiff's requested relief" was the subject of the pending appeal, but she did not specify which relief. The judge did not specifically address this issue because it was not adequately raised. Defendant generally argues that the judge lacked jurisdiction to make a substantive ruling on child support because that issue was before the Arbitrator.

The Arbitrator considered defendant's application for child support, filed in January 2014 and decided in February 2018, and the final order ending all issues in the arbitration was entered on April 2, 2018. Plaintiff did not seek

child support during arbitration, but in May 2018, he sought child support from the judge, retroactive to September 2017. The judge awarded plaintiff child support, but declined giving retroactive effect to the award, holding that defendant's obligation would begin in May 2018—when plaintiff filed his motion in the trial court.

The arbitration only dealt with defendant's request for child support, not plaintiff's. But because the parties agreed in December 2017 to submit "[a]ll issues that could have been raised and adjudicated by the [c]ourt in the New Jersey Superior Court, Family Part – both interim and final" to the Arbitrator, arguably any request for child support during the arbitration period, including plaintiff's, should have been submitted to the Arbitrator. Once the arbitration was fully concluded in April 2018, however, there was no reason plaintiff could not apply to the judge for child support based on changed circumstances. See Lepis v. Lepis, 83 N.J. 139, 145 (1980) (noting that "[t]he equitable power of the courts to modify alimony and support orders at any time is specifically recognized by N.J.S.A. 2A:34-23"); see also Chalmers v. Chalmers, 65 N.J. 186, 192 (1974) (stating that child support is "always subject to review on a showing of changed circumstances"). Thus, notwithstanding the appeal in Forman I, the judge had jurisdiction to consider plaintiff's application based on changed

circumstances, which takes us to the main reason we conclude remand is necessary.

## IV.

Defendant argues that the judge erred in awarding plaintiff child support based on changed circumstances without holding a plenary hearing to consider "new evidence and updated financial information." On this point, we agree with defendant. We therefore vacate the child support award and remand for a hearing.

"Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Accordingly, "[t]he general rule is that findings by a trial [judge] are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). However, a reviewing court owes no deference to a trial judge's interpretation of the law, which it reviews de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A trial judge's decision to grant or deny an application to modify child support is reviewed for an abuse of discretion. Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006). "Of course, the exercise of this discretion is not

limitless" and remains guided by the law and principles of equity.  Steneken v.

Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004).  A judge abuses his or her

discretion where the award is "manifestly unreasonable, arbitrary, or clearly

contrary to reason or to other evidence, or the result of whim or caprice."  Jacoby

v. Jacoby, 427 N.J. Super. 109, 116-17 (App. Div. 2012) (internal quotation

marks and citation omitted).

In determining whether to modify child support, the trial judge should

bear in mind that "New Jersey has long espoused a policy favoring the use of

consensual agreements to resolve marital controversies."  Konzelman v.

Konzelman, 158 N.J. 185, 193 (1999).  As contracts, MSAs should be enforced

according to the original intent of the parties.  Pacifico v. Pacifico, 190 N.J. 258,

266 (2007).

Absent "compelling reasons to depart from the clear, unambiguous, and

mutually understood terms of" the MSA, a judge is generally bound to enforce

its terms.  Quinn v. Quinn, 225 N.J. 34, 55 (2016).  Our Supreme Court "has

observed that it is 'shortsighted and unwise for courts to reject out of hand

consensual solutions to vexatious personal matrimonial problems that have been

advanced by the parties themselves.'"  Id. at 44 (quoting Konzelman, 158 N.J.

at 193).  Consistent with New Jersey's "strong public policy favoring stability

12

of arrangements in matrimonial matters," courts will not "unnecessarily or lightly disturb[]" MSAs that are fair and equitable. Ibid. (internal quotation marks and citations omitted).

Notwithstanding the policy in favor of enforcing MSAs, courts have the ability to modify marital agreements when changed circumstances occur due to "the nature of some post-judgment issues, such as custody of children and financial support for the family[.]" Id. at 46; see also Conforti v. Guliadis, 128 N.J. 318, 323 (1992) (noting that MSAs are unlike other contracts in that they "must serve the strong public and statutory purpose of ensuring fairness and equity in the dissolution of marriages"). "While courts are predisposed to uphold [MSAs], this enforceability is subject to judicial supervisory control." Patetta v. Patetta, 358 N.J. Super. 90, 95 (App. Div. 2003) (citation omitted); see also N.J.S.A. 2A:34-23 (stating that child support orders "may be revised and altered by the [judge] from time to time as circumstances may require").

In considering the equity of agreed-upon child support, courts must bear in mind that the right of support belongs to the child, not the custodial parent. Pascale v. Pascale, 140 N.J. 583, 591 (1995); Ordukaya v. Brown, 357 N.J. Super. 231, 241 (App. Div. 2003) (citations omitted); see also Blum v. Ader, 279 N.J. Super. 1, 4 (App. Div. 1994) (holding that the parties to a contract

"cannot bargain away" their child's right to support); accord Patetta, 358 N.J. Super. at 95 (noting that where the rights of children are concerned, agreements are subject to "careful judicial scrutiny").

The party seeking to modify a support obligation included in an MSA bears the burden of showing changed circumstances. Lepis, 83 N.J. at 146-48. "Changed circumstances are not confined to events unknown or unanticipated at the time of the agreement[,]" but courts must take care "not to upset the reasonable expectations of the parties." J.B. v. W.B., 215 N.J. 305, 327 (2013).

Moreover, when one or both of the parties have contractually "agreed to undertakings advantageous to a child beyond that minimally required," the public policy in favor of enforcing such agreements "usually counsels against modification." Ibid. (citations omitted); see also Lissner v. Marburger, 394 N.J. Super. 393, 403 (Ch. Div. 2007) (noting that "if a party agrees to support a child beyond that otherwise required, a court must favor the agreement, in the interests of the child"); cf. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 584 (App. Div. 2016) (holding child support modification warranted because the parties' incomes had "changed dramatically" since they settled their divorce disputes).

Based on plaintiff's certification regarding the change in custody for the son and the Arbitrator's findings regarding income, the judge (1) relieved the

parties of their obligation under the MSA to each be responsible for child-care costs during each party's parenting time, and (2) set a specific sum for child support. Although the party's respective parenting time of the son admittedly changed to some degree, the nature and extent of that change was in dispute and not fully developed. The judge should have considered whether the extent of the changed circumstances justified a departure from the MSA's terms. Assuming that changed circumstances warranted some child support award, we conclude there was inadequate consideration given to the appropriate amount and to whether equitable principles warranted a deviation from the child support guidelines.

Here, in the August 2018 order awarding child support to plaintiff, the judge stated that "[s]ince September 2017, [p]laintiff has had physical custody of the [son] . . . . Defendant acknowledged said change in custody during the arbitration." This finding is not adequately supported by the record. Plaintiff certified that the son lived with him "on a full-time basis" and visited defendant in Long Island "primarily on alternate weekends, but usually only overnights on Fridays." The judge accepted this fact, awarding plaintiff child support based on the son spending only twenty-six overnights per year with defendant. In addition, plaintiff asserted, and the judge accepted, that defendant admitted

15

during the arbitration that plaintiff had physical custody of the son.

During the arbitration, however, defendant only admitted that the son was staying with her part time, not that the son now spent virtually all of his time in plaintiff's custody. Defendant specifically stated that the son spent "[t]hree out of four weekends" per month in Long Island with her as of September 2017. Also, the undisputed reason for the change was the distance of defendant's residence from the son's school, which would only apply during weeks when the school was in session.

Moreover, in opposing plaintiff's motion to reconsider the denial of child support, defendant certified that: (1) the "window of time" when the son "switched residences" was only approximately nine months, meaning that the son's living arrangements changed again in June 2018; (2) during the time when he "switched residences," the son spent "at least" one or two nights per week with a friend, rather than at either parent's home; and (3) defendant paid many of the son's living expenses even when he was not staying with her. The judge accepted plaintiff's assertions without resolving the conflicting facts offered by defendant and without considering that plaintiff failed to offer evidence as to custody arrangements during school breaks and summer vacations. There were no findings as to the duration and extent of the change in the son's custody, his

summer living arrangements, or the payment of his living expenses when he stayed overnight with friends.

There was no consideration of the MSA's terms nor whether the alleged change in custody was sufficient to justify deviating from the parties' agreed-upon child support arrangement. Plaintiff and the judge both cited a portion of the April 2015 consent order for the proposition that the parties agreed support would change if living arrangements changed. However, in context, the cited portion of the April 2015 consent order does not support this.

The parties agreed in the MSA that neither would pay child support. They then agreed in the April 2015 consent order that if the Arbitrator awarded child support to defendant and, later, "the overnight arrangement as utilized in any child support calculation change substantially[,]" then the parties would "consult on recalculation." Since the Arbitrator made no award of child support, there was no "child support calculation" that the parties were obliged to discuss and, if necessary, recalculate. Thus, plaintiff's assertion that the parties affirmatively agreed that any change in custody would trigger a right to child support is not supported by the record.

Even assuming that plaintiff carried his burden of establishing that changed circumstances warranted a deviation from the MSA and an award of

A-0238-18T3

child support, the judge erred in simply accepting the sum proposed by plaintiff without analyzing the circumstances, the needs of the child, and equitable considerations. The judge accepted the child support figure proposed by plaintiff of $367 per week without discussion. Plaintiff certified that he arrived at this amount using the child support guidelines. See Schedule of Child Support Awards, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-F to R. 5:6A, www.gannlaw.com (2019) (Appendix IX-F Schedule). Plaintiff stated that he was making the "concession" that he was "willing to accept that . . . defendant pay child support based upon the . . . [g]uidelines alone[,]" even though the parties' income exceeded the amount covered by them. The judge was obliged to conduct an independent analysis of the appropriate award, notwithstanding plaintiff's purported "concession."

Rule 5:6A provides that "when an application to establish or modify child support is considered by the court," the child support guidelines "shall be applied" but "may be modified or disregarded by the court only where good cause is shown." Good cause exists, in part, where (1) there are "other relevant factors which may make the guidelines inapplicable or subject to modification," or (2) an "injustice would result from the application of the guidelines." R. 5:6A.

The guidelines apply to the calculation of income when the parties have a combined gross taxable income of a specified amount or less. Connell v. Connell, 313 N.J. Super. 426, 431 (App. Div. 1998); Appendix IX-F Schedule. Applying the Appendix IX-F Schedule, the specified amount is currently $3600 per week. When, as in this case, the parties' combined income exceeds $3600 per week, the trial court has to apply the guidelines up to the maximum; when making an additional award, the amount should be determined by considering the factors enumerated in N.J.S.A. 2A:34-23(a). Pascale, 140 N.J. at 595; Connell, 313 N.J. Super. at 431. Courts should not simply extrapolate an additional amount from the guideline because that method undermines the statistical basis of the guidelines. See Pascale, 140 N.J. at 593; Walton v. Visgil, 248 N.J. Super. 642, 649 (App. Div. 1991); see also Considerations in the Use of Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A(20)(b) to R. 5:6A, www.gannlaw.com (2019).

In Rubin v. Rubin, this court cautioned the trial judge against relying on incomplete income information and simply imposing the amount sought by the party requesting support. 188 N.J. Super. 155, 160 (App. Div. 1982). This court explained:

> We are dealing here with the support of a child. It may well be that the income tax returns would have

> indicated the propriety of [the] defendant being ordered to pay more than the $100 a week child support requested by the wife based on her uninformed speculation as to what the defendant's income was.
>
> [Ibid.]

This court noted that "the child's interests may well have been adversely prejudiced by the precipitous action of the court" in refusing to allow and consider all relevant evidence. Ibid.

Here, the judge erred in relying on the numbers provided by plaintiff and his "concession" that he would take less than the amount to which he was legally entitled. If changed circumstances warranted an award, it was the son, not plaintiff, who was entitled to support. The judge had an affirmative duty to obtain relevant financial information from both parties and, upon finding facts sufficient to justify making an award, to determine an equitable sum above the child support guidelines' maximum.

In addition, the judge's reliance on the Arbitrator's conclusion regarding defendant's income was misplaced. The Arbitrator noted defendant's approximate income of $200,000 for purposes of deciding whether she carried her evidentiary burden to establish changed circumstances sufficient to warrant an award of child support from plaintiff to her. The purpose of the Arbitrator's approximation was to determine that "[d]efendant had higher earnings than

[p]laintiff since the filing of [defendant's] motion[,]" thus rendering an award of support to her inappropriate. The $200,000 amount referenced by the Arbitrator was not intended to be a finding of defendant's specific income upon which to base a particular calculation. The judge should have sought and considered updated and accurate information regarding defendant's income rather than solely relying on the Arbitrator's estimate.

We therefore vacate the child support award and remand for a plenary hearing to allow the parties to present all relevant evidence regarding changed circumstances, income, and expenses. We leave the details of the plenary hearing to the judge's discretion.

## V.

Defendant argues that the judge erred in ordering her child support payments be made via income withholding without first requiring plaintiff to file an application requesting that relief and giving defendant an opportunity to respond. We see no error in that regard but understand that continued child support payments will be dependent on the findings of fact and conclusions of law on remand.

The applicable legal standards are set forth in N.J.S.A. 2A:17-56.8 and Rule 5:7-4A(a). The statute provides, in pertinent part:

21

> A support provision contained in an order or judgment issued by the court shall be paid by income withholding unless the order or judgment specifically provides for an alternative payment arrangement to which the parties agree in writing or the obligor or obligee demonstrates and the court finds good cause for establishing an alternative arrangement.
>
> [N.J.S.A. 2A:17-56.8.]

Similarly, Rule 5:7-4A(a) states: "[a]ll orders that include child support shall be paid through immediate income withholding from the obligor's current and future income, unless the parties agree in writing to an alternative arrangement, or either party shows and the court finds good cause for an alternative arrangement." Thus, by ordering income withholding, the judge committed no error, but was simply implementing the statutory and rule requirements.

Nevertheless, defendant's contention that she was unaware income withholding could be ordered is concerning. Both the statute and the Rule placed the obligation on plaintiff to include written notice that income withholding would result from a child support award to defendant in his motion for child support and his motion for reconsideration. Similarly, the judge's order should have included this notice. N.J.S.A. 2A:17-56.8 establishes:

> Every complaint, notice or pleading for the entry or modification of a support order and every court order which includes child support shall include a written notice to the obligor stating that the child support

provision of the order shall, and the health care coverage provision may, as appropriate, be enforced by an income withholding upon the current or future income due from the obligor's employer or successor employers and upon the unemployment compensation benefits due the obligor and against debts, income, trust funds, profits or income from any other source due the obligor except as provided in section 3 of [L.] 1981, [c.] 417 . . . . The written notice shall also state that the driver's license and professional or occupational licenses, or recreational or sporting license in accordance with [L.] 1996, [c.] 7 . . . held or applied for by the obligor may be denied, suspended or revoked if: the child support arrearage is equal to or exceeds the amount of child support payable for six months; the obligor fails to provide health care coverage for the children as ordered by the court for six months; or the obligor fails to respond to a subpoena relating to a paternity or child support proceeding; or a warrant for the obligor's arrest has been issued by the court due to failure to pay child support as ordered, failure to appear at a hearing to establish paternity or child support, or failure to appear at a hearing to enforce a child support order and said warrant remains outstanding. The written notice shall also state that the amount of a child support order and the provisions for health care coverage may be reviewed and updated when there has been a change in circumstances or in accordance with section 5 of [L.] 1990, [c.] 92[.]

Correspondingly, Rule 5:7-4A(a)(3) provides:

Every complaint, notice or pleading for the entry or modification of a child support order shall include the following written notice: [i]n accordance with N.J.S.A. 2A:17-56.7a[], the child support provisions of a court order are subject to income withholding on the effective date of the order unless the parties agree, in writing, to

> an alternative arrangement or either party shows and the court finds good cause to establish an alternative arrangement. The income withholding is effective upon all types of income including wages from current and future employment.

Plaintiff did not provide defendant with the required written notice when he applied to the judge for child support, and the judge's order does not contain this notice.

The lack of prior notice alone, however, should not invalidate a child support award. That is particularly true where, as here, no prejudice resulted. Although defendant contends that September 18, 2018 order was sent to her employer, "causing violations of her firm protocol," nothing in the record supports this. The income withholding order indicates that the identity of defendant's employer was unknown, and defendant submits no proof as to her employer's identity or protocols. Also, defendant offers nothing to suggest that if she had prior notice and an opportunity to object, she could have shown good cause to exempt her case from the general income withholding requirement.

VI.

Defendant argues that the judge erred in ordering her to pay child support for the son until his twenty-third birthday. We conclude, especially because we have vacated the child support award and have remanded for a hearing, that the

record must be more fully developed on the question of whether the son was or would remain unemancipated.

"One of the fundamental concepts in American society is that parents are expected to support their children until they are emancipated, regardless of whether the children live with one, both, or neither parent." Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004). "Emancipation—the conclusion of the fundamental dependent relationship between parent and child—is not a self-executing principle[]" and does not automatically occur when a child reaches a certain age. Dolce v. Dolce, 383 N.J. Super. 11, 17 (App. Div. 2006); see also Newburgh v. Arrigo, 88 N.J. 529, 543 (1982) (noting that "emancipation need not occur at any particular age"). Nevertheless, "a rebuttable presumption against emancipation exists prior to attaining the age of eighteen," and the fact that a child has reached that age establishes prima facie proof of emancipation. Dolce, 383 N.J. Super. at 17; see also N.J.S.A. 9:17B-3 (providing that, with specified exceptions, "every person [eighteen] or more years of age shall in all other matters and for all other purposes be deemed to be an adult and, notwithstanding any other provision of law to the contrary, shall have the same legal capacity to act and the same powers and obligations as a person [twenty-one] or more years of age").

25

"The issue of '[w]hether a child is emancipated at age eighteen, with the correlative termination of the right to parental support,' is fact-sensitive." Dolce, 383 N.J. Super. at 17 (alteration in original) (quoting Newburgh, 88 N.J. at 543). "[T]he essential inquiry is whether the child has moved 'beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own.'" Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997) (quoting Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995)). "This determination involves a critical evaluation of the prevailing circumstances including the child's need, interests, and independent resources, the family's reasonable expectations, and the parties' financial ability, among other things." Dolce, 383 N.J. Super. at 18.

Once the age of majority is reached and the presumption of emancipation arises, "the burden of proof to rebut the statutory presumption of emancipation shifts to the party or child seeking to continue the support obligation." Ricci v. Ricci, 448 N.J. Super. 546, 572 (App. Div. 2017). In this regard, "while parents are not generally required to support a child over eighteen, his or her enrollment in a full-time educational program has been held to require continued support." Patetta, 358 N.J. Super. at 94; see also Newburgh, 88 N.J. at 543 (noting that "in appropriate circumstances, the privilege of parenthood carries with it the duty

to assure a necessary education for children"). In keeping with this duty, "college costs are recognized as a form of support for unemancipated children." Ricci, 448 N.J. Super. at 572; see also N.J.S.A. 2A:17-56.67(a) (providing that "a child support obligation shall terminate by operation of law without order by the court when a child reaches [nineteen] years of age unless" certain criteria, including continued enrollment in specified educational institutions, are met).

The son had just turned nineteen when the judge ordered child support. The August 2018 order and statement of reasons said nothing about the son's emancipation or educational status. Indeed, the judge referenced "the parties' minor child, [the son]," suggesting that she was unaware that the son had reached the age of majority before plaintiff moved for support. The September 2018 order stated that child support would continue until the son's twenty-third birthday "due to . . . his educational status effective" as of the time the May 2018 motion was filed.

However, the certifications plaintiff filed with the May 2018 motion and his motion for reconsideration did not address the son's educational status at the time, and there was no evidence as to when and under what circumstances he might attend college. The only evidence regarding his education was defendant's statement in the May 10, 2017 arbitration transcript that the son was

then in the eleventh grade. Presumably, by the time plaintiff filed his motion the following year, the son was preparing to graduate from high school.

Plaintiff notes that N.J.S.A. 2A:17-56.67(c) provides that "[a] parent responsible for paying child support who disagrees with the court's decision to continue child support beyond the date the child reaches [nineteen] years of age" is free to move for relief from that obligation at a later date. The statute, however, also provides that the "custodial parent" must "establish sufficient proof" of one of the enumerated bases to continue child support after the age of nineteen. Ibid. Here, the record must be more fully developed on this point.

Plaintiff argues that the support award's duration is appropriate because "defendant does not contest the [son's] educational status." However, this puts the onus on defendant to come forward with proofs that her adult-child does not need continuing support for college, which impermissibly shifts the applicable burden. Moreover, regardless of whether defendant offered evidence, the judge was required to do a fact-specific analysis "including the child's need, interests, and independent resources, the family's reasonable expectations, and the parties' financial ability, among other things[,]" to determine the son's emancipation and educational status. Dolce, 383 N.J. Super. at 18. This analysis was particularly necessary here because the sole reason the judge ordered support was the

purported change in the son's custody resulting from the son's continued attendance at a New York City high school. In the absence of any evidence regarding the son's college plans, there was no basis for the judge to conclude that the son would spend more of his time in his father's residence after leaving high school.

As to college costs, we see no evidence from which the judge could have concluded that plaintiff needed the support order. Paragraph 5.5 of the MSA provides for the parties to essentially split any post-secondary education expenses, which establishes the parties had affirmatively agreed on how to finance college for the son. There was no evidence to justify relieving either party of this obligation under the MSA.

In sum, even assuming that plaintiff established changed circumstances sufficient to justify deviating from the parties' agreement regarding child support, the judge erred in ordering the continuation of that support until the son's twenty-third birthday, absent proof regarding his emancipation and educational status.

We therefore vacate the child support award and remand for a plenary hearing, allowing the parties to present all relevant evidence on these points to the judge.

VII.

The judge did not abuse her discretion by awarding attorneys' fees to plaintiff on his motion leading to the financial awards in the June 2018 order. A judge may, in his or her discretion, order a party to pay the successful opposing party's attorneys' fees in family actions. R. 4:42-9(a)(1); R. 5:3-5(c). When doing so, the judge should consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c); see also Mani v. Mani, 183 N.J. 70, 94-95 (2005); N.J.S.A. 2A:34-23 (providing that the judge "shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party").]

Fee awards should be disturbed "only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995). A trial judge's failure to consider the appropriate factors, make the required findings, and state its conclusions of law, constitutes a clear abuse of

discretion. <u>Saffos v. Avaya Inc.</u>, 419 N.J. Super. 244, 270-71 (App. Div. 2011). Ordinarily, the purpose of a counsel fee award in a matrimonial action is to equalize the relative financial resources of the parties. <u>J.E.V. v. K.V.</u>, 426 N.J. Super. 475, 493 (App. Div. 2012).

The judge analyzed the relevant factors. She awarded counsel fees to plaintiff based on her findings that defendant acted in bad faith and that she had the ability to pay because defendant earned "significantly more." Thus, the judge's finding that defendant had the ability to pay and earned "significantly more" than plaintiff, coupled with her finding of bad faith, provided a sufficient basis to exercise her discretion to award attorneys' fees.

Bad faith in the context of a fee application "is not simply bad judgment or negligence[;] rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." <u>Borzillo v. Borzillo</u>, 259 N.J. Super. 274, 292 (Ch. Div. 1992) (internal quotation marks and citation omitted). "'Bad faith' has also been defined as an intent to mislead or deceive another, or a neglect or refusal to fulfill some duty or contractual obligation not prompted by some honest mistake as to one's rights or duties, but by some interested or sinister motive." <u>Ibid.</u> (citing <u>Black's Law Dictionary</u> 127 (5th ed. 1979)).

Here, the judge disbelieved defendant's explanation for failing to file a

timely reply to the May 2018 motion. Additionally, the judge found that defendant failed to pay (1) the amounts ordered in three arbitration orders that were confirmed by the trial judge, and (2) plaintiff his share of the GS investment account. Moreover, defendant agreed to indemnify plaintiff for his attorneys' fees should she "willfully fail to abide by any terms" of the MSA. The judge found that defendant's "willful violation of the MSA resulted in [p]laintiff's counsel fees being significantly protracted in this matter." Defendant does not dispute that the MSA obliged her to pay plaintiff his share of the GS account and that she willfully failed to do so.

To the extent that we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We vacate the child support award and remand for a plenary hearing consistent with this opinion. Along with all other required findings and conclusions of law, the judge should determine whether child support is warranted, and if so, the amount of support and whether it should continue until any specific age. We otherwise affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0238-18T3